**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| GENESIS HEALTHCARE, INC., *et al.*,[1] | § | Case No. 25-80185 (SGJ) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

|  |  |  |
|---|---|---|
| Genesis Healthcare, Inc., its affiliated debtors, and the Statutory Unsecured Claimholders' Committee of Genesis Healthcare, Inc., | ) ) ) ) | |
| Plaintiffs. | ) ) | |
| v. | ) ) | |
| WAX Dynasty Partners LLC, MAO 22322 LLC | ) ) | |
| Defendants. | ) ) | Adversary Proceeding No. _____ |

**COMPLAINT OF DEBTORS AND THE STATUTORY UNSECURED**
**CLAIMHOLDERS' COMMITTEE OBJECTING TO CLAIMS**
**FILED BY WAX DYNASTY PARTNERS LLC AND MAO 22322 LLC**

---

[1] The last four digits of Genesis Healthcare, Inc's federal tax identification number are 4755. There are 299 Debtors in these chapter 11 cases, which are being jointly administered. A complete list of the Debtors and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://dm.epiq11.com/Genesis. The location of Genesis Healthcare, Inc.'s corporate headquarters and the Debtors' service address is 101 East State Street, Kennett Square, PA 19348.

Genesis Healthcare, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors" or "Genesis"),[2] along with the Statutory Unsecured Claimholders' Committee of Genesis Healthcare, Inc. (the "Committee," and together with Debtors, the "Plaintiffs") hereby bring this complaint (the "Complaint")[3], pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") asserting causes of action objecting to, seeking to avoid, and/or seeking to subordinate: (i) the secured[4] and unsecured[5] claims asserted by WAX Dynasty Partners LLC (the "WAX Claims"); and (ii) the secured[6] and unsecured[7] claims asserted by MAO 22322 LLC (the "MAO Claims," and together with the WAX Claim, the "WAX & MAO Claims").  In support of this Complaint, Plaintiffs respectfully state as follows:[8]

## PRELIMINARY STATEMENT

1.      This is a very simple and straightforward objection.  The claims at issue in this Complaint relate to secured and unsecured Genesis debt held by one entity owned by Joel Landau

---

[2] The Debtors join in this Complaint to jointly assert the estate's preserved challenges to the WAX Secured Claim and MAO Secured Claim.  To the extent there is any determination that the Debtors are unable to bring this Complaint, the Debtors shall be dropped as Plaintiffs and the Complaint shall continue to be brought and prosecuted by the Committee alone.

[3] Portions of the Complaint are redacted and/or filed under seal pursuant to ¶ 15 of the *Order Approving Amended Stipulated and Agreed to Confidentiality Agreement and Protective Order* [Bankr. Case No. 25-80185, Docket No. 1206].

[4] WAX 2016 Term Loan ($120M) and WAX DIP Term Loan (the "WAX Secured Claims").

[5] MAO/WAX Split Note (Consolidated A-1), MAO/WAX Split Note (Consolidated A-2), and MAO/WAX A-2 Note (the "WAX Unsecured Claims")

[6] MAO 2016 Term Loan ($120M) and MAO 2018 Term Loan ($40M) (the "MAO Secured Claims").

[7] MAO/WAX Split Note (Consolidated A-1), MAO/WAX Split Note (Consolidated A-2), and MAO/WAX A-2 Note (the "MAO Unsecured Claims").

[8] WAX and MAO agreed to waive and not pursue recovery on the claims at issue in this Objection as part of the proposed sale transaction that the Court rejected.  They are electing to pursue recovery on them now.

1

(WAX) and another entity owned by a long-time Landau friend and business partner, David Gefner (MAO).

2.     Prior to WAX and MAO obtaining this debt, Welltower Inc. ("Welltower")—the Debtors' largest secured creditor—agreed to forgive it in 2021 and then again in 2024.  With Welltower's assistance, however, Joel Landau ("Landau") and a few Genesis employees, whom he had placed in charge of the Debtors' business decisions, ███████████████████████ ████████████████████████████████████████████████.[9]

3.     In the words of the Debtors' management at the time of transfer, ████████ █████████████████████████████████████████████.  The intention was that the ██████████████████████████████████████████████████████ ████████████████████.  Now, however, in connection with these chapter 11 cases WAX and MAO would have this Court treat this debt as legitimate debt entitled to payment in full before other stakeholders receive consideration.  Obviously, according WAX and MAO such treatment would be inequitable to all the Debtors' unsecured creditors, and would amount to a fraudulent transfer by vitiating ██████████████████████████████████████████. Furthermore, such a result would reward a diversion of corporate opportunity, *i.e.*, ████ ████████████████████████████████████████████████████ ████████████████████████.  Each of these reasons, standing alone or together, gives this court warrant to disallow and/or subordinate the WAX & MAO Claims.

4.     Plaintiffs accordingly object to the claims asserted by WAX and MAO in their entirety.

---

[9] This Complaint focuses solely on the WAX & MAO Claims—and does not include any other causes of action that Plaintiffs have and may assert against any party.  Plaintiffs reserve all rights with respect to those claims.

2

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Each count in this action is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**PARTIES**

6.      Plaintiffs Genesis Healthcare, Inc. and its affiliated debtors are the Debtors in these chapter 11 cases.  The Debtors currently operate more than one hundred seventy-five Skilled Nursing Facilities ("SNF") and Assisted Living Facilities ("ALF") in multiple states.

7.      Plaintiff Statutory Unsecured Claimholders' Committee of Genesis Healthcare, Inc. is the statutory committee for unsecured creditors appointed in these Chapter 11 Cases.

8.      Defendant WAX Dynasty Partners LLC ("WAX") is a Delaware limited liability company.  WAX's registered agent is Platinum Filings LLC, 555 E. Loockerman Street, Suite 320, Dover, Delaware 19901.

9.      MAO 22322 LLC ("MAO") is a Delaware limited liability company.  MAO's registered agent is Northwest Registered Agent Service, Inc., 8 The Green, Ste. B, Dover, Delaware 19901.

**STATEMENT OF FACTS**

A.      **Legal Background**

10.     On July 9, 2025, Debtors filed voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court, thereby commencing these bankruptcy cases. The Debtors are continuing in possession of their respective properties and are operating and managing their businesses, as debtors in possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

3

11. On July 30, 2025, the Office of the United States Trustee of the Northern District of Texas (the "U.S. Trustee") appointed the Committee pursuant to § 1102 of the Bankruptcy Code (as reconstituted and amended from time to time, the "Committee"). *See* Docket No. 250.

12. On August 28, 2025, the Court entered the *Final Order Authorizing Debtors to Obtain Postpetition Financing and Utilize Cash Collateral, Granting Adequate Protection to Prepetition Secured Parties, Modifying the Automatic Stay, and Granting Related Relief (Dkt. 677)* (the "Final DIP Order"). The Committee brings this Objection pursuant to the challenge rights preserved by the Court in the Final DIP Order. *See id*.

13. Plaintiffs object to the WAX & MAO Claims in their entirety. Any purported rights acquired by WAX and MAO were acquired through a voidable, sham transaction in which reasonably equivalent value was not exchanged, and which was entered into for the intent of defrauding the Debtors' creditors at a time when the company was insolvent.[10]

B.   **Genesis and Welltower**

14. In 2011, Welltower (then known as Health Care REIT, Inc.) commenced its business dealings with Genesis by purchasing substantially all Genesis-owned real estate for $2.4 billion in a sale-leaseback transaction. After the sale, Genesis continued to operate the facilities pursuant to a long-term triple-net master lease with Welltower.

---

[10] The focus of this objection is on the purported claims of WAX and MAO. Plaintiffs reserve the right to object to all other claims, including those of Welltower or Omega to the extent either Welltower or Omega assert that they possess liens superior in priority to the Debtors' estate's interest resulting from avoidance of the WAX and MAO transactions as outlined herein, the transfer of WAX's and/or MAO's liens in the event of subordination under § 510(c), and/or the imposition of a constructive trust on WAX's and/or MAO's claims. The Debtors' estates would not be subject to any subordination agreement between WAX and MAO and Welltower and Omega.

15.     During the 2010s, Welltower expanded its relationship with Genesis, funding Genesis's expansion through conversion of unpaid obligations into a secured term loan (the "WT Term Loan") and bridge financing for Genesis real estate acquisitions (the "WT RE Loans").

16.     Starting in 2017, Genesis also began to divest itself of multiple facilities, a move that generated about $140 million, which it, in turn, used to pay Welltower.  Those divestitures triggered termination fees owed to Welltower, and to pay those fees, Genesis issued two unsecured take-back notes in the aggregate principal amount of approximately $62.9 million (the "WT Unsecured Take-Back Notes").  Welltower also refinanced the WT RE Loans into bridge loans in an aggregate principal amount of $317.0 million (the "WT Bridge Loans").[11]

17.     Following the initial wave of the COVID-19 impact, Genesis's finances suffered significantly and the Company began pursuing various restructuring efforts, including as to the obligations to Welltower.

18.     Ultimately, the parties reached an agreement in 2021 in connection with Landau's takeover of Genesis to help resolve this liquidity crisis, whereby, among other things: (a) Genesis would terminate its leases on 51 facilities, (b) Genesis would support Welltower's sale of its interests in several properties that Genesis had been leasing from Welltower to a new joint venture co-owned in equal shares by Welltower, a Landau entity called Aurora Healthcare Services ("Aurora"), and a third party, and (c) Welltower agreed to, among other things, reduce certain debt owed by Genesis and write-off certain other debt, when the transfer of the 51 leases occurred.

---

[11] United States Securities and Exchange Commission, *Genesis Healthcare, Inc. Form 10-K* (Fiscal year ended December 31, 2016), at F-28–29 https://www.sec.gov/Archives/edgar/data/1351051/000155837017001363/gen-20161231x10k.htm.

19. At around the same time, ███████████████████████████████

███████████████████████████████████████████████████████████

████████████.[12]

20. As a key part of these transactions, ████████████████████████

███████████████████████████████████████████████████████████

███████████████████.[13]  ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

21. The reason for this was simple: █████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████

22. The bargained-for debt forgiveness remained in a "purgatory" area until 2024.

23. Cindat was a joint-venture partner of Welltower that served as landlord for 28 Genesis-operated facilities in Pennsylvania. ████████████████████████

████████████████████████████████████

---

[12] The Committee has asserted that ██████████████████████████████ in connection with this investment.

[13] As will be described in further detail below, ████████████████████████████████████████████████████████

24.     In response to the pressure being applied by Landau ████████████████████ ██████, on July 1, 2024, Cindat filed a lawsuit derivatively on behalf of that joint venture against, among others, Welltower, certain Genesis tenant subsidiaries, ReGen, and Landau for an "extortious scheme."   Cindat asserted it was required to file its lawsuit derivatively because Welltower's entanglement with Landau created a conflict.

25.     ████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

█████████████████████████████████████████[14] ████████████████████

████████████████████████████████████████████████████[15]

26.     At the time these Landau-driven negotiations were occurring██████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████.[16]

27.     On September 30, 2024, Cindat, Landau, and Welltower reached a holistic settlement of all of their respective disputes.

---

[14] Exhibit A, Genesis_UCC00023709 (████████████████████████████████████████
████████████████████████████████████████████), ¶ 78.

[15] *Id.* at ¶ 86.

[16] Exhibit B, WELLGEN00138870 (█████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████)

28.     Welltower needed Genesis on board with the transaction because ███████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

29.     ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████[17]█████████████████████████████

███████████████████████████████████████████████████████████████████████████

██████[18]████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████[19]

30.     What happened next was a shift in the transaction planning.  Instead of putting

Genesis in the transaction as a conduit to closing and providing it the promised benefit, ████████

████████████████████████████████████████████.[20]

31.     At Landau's insistence and with Kirschner's help, ████████████████████████

███████████████████████████████████████████████████████████████████████████

████████████████████████████     All told, WAX, ████████████████████████     and

---

[17] Exhibit C, WELLGEN00116731 (██████████████████████████████████████████
████████████████████████████████████████████████████).

[18] *Id.*

[19] *Id*.

[20] Notably, ████████████████████████████████████████████████████████████
Exhibit D, GENESIS_UCC00095957.

MAO, ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

32.     As to WAX, Welltower and Landau papered the deal ██████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

33.     The end result was a transaction with the following steps: (1) ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████.

34.     Despite acquiring the █████████████████████████████████████

██████████, Landau immediately leveraged that asset ████████████████████

████████████████████████████████████████████. Less than ten

days after the transaction closed, ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████

35.    On October 15, 2024, ███████████████████████████████

████████████████████████████████████████,[21]   █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████[22]

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

36.    Make no mistake, at the time, ████████████████████████████

████████████████.  In  discussing  the  state  of  finances,  ████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████.[23]

████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

---

[21] Both Perigrove and Pinta are Landau entities and Shapiro has a long history of affiliation with Landau which has continued throughout this case.

[22] Exhibit E, GENESIS_UCC00135636 (████████████████████████████████████████████).

[23] GENESIS_UCC00131966.

## CAUSES OF ACTION

37.     Plaintiffs object to the WAX & MAO Claims based on multiple theories, all of which relate to Landau's and Kirchner's ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████ .

## COUNT I

### Avoidance of Actual Fraudulent Transfer Under Bankruptcy Code § 548(a)(1)(A)
### (Against WAX and MAO)

11 U.S.C. § 548

38.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

39.     Bankruptcy Code § 548(a)(1)(A) provides that the court may avoid any transfer of the Debtors' property or incurrence of an obligation made within two years of the petition that the debtor made with the actual intent to hinder, delay, or defraud any creditor. *See* 11 U.S.C. § 548(a)(1)(A).

40.     In connection with the September 2024 transaction, the Debtors incurred obligations and effectuated transfers of property interests in connection with the restructuring, allocation, and/or assignment of interests in the WT Term Loan and related indebtedness to WAX and MAO.

41.     Specifically, in connection with the 2024 transaction, the Debtors issued new notes to WAX and MAO, ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ . Welltower had, however, ███████████████████████████████████████ ██████████████████████████████████████████████████ WAX and

11

MAO now assert, however, that their claims based on the new notes are valid, enforceable, and entitled to payment prior to other Genesis creditors.  The issuance of those notes to WAX and MAO constituted the incurrence of an obligation to WAX and MAO within the meaning of § 548.

42.     The September 2024 transaction improved WAX and MAO's positions relative to other creditors.  For example, the September 2024 transaction required Genesis to pay ███████ ████████████████████████████████████  These benefits would and should have been provided to Genesis in return for its agreement to participate in the transaction.  Instead, ██████ ████████████████████████████████

43.     The actual details of the September 2024 transaction were concealed from Genesis' creditors, including White Oak, and all unsecured creditors.

44.     The transfers described in the September 2024 transaction were made with the intent to hinder, delay or defraud the creditors of Genesis.  As set forth above, Landau and other insiders coordinated the September 2024 transaction to extract value from Genesis for the benefit of Landau and to the detriment of the company in an effort to prevent creditors from recovering on then-current or forthcoming judgments against Genesis.

45.     WAX and MAO are insiders and intended for, or believed that Debtor would, incur debts beyond its ability to pay as the debts matured as a result of the September 2024 transaction.

46.     Accordingly, Plaintiffs are entitled to a judgment against WAX and MAO (i) avoiding the transfers made to WAX and MAO in the 2024 transaction under Bankruptcy Code § 548(a), (ii) recovering the transfers for the benefit of the estates under Bankruptcy Code § 550(a), and (iii) preserving the transfers for the benefit of the estates under Bankruptcy Code § 551.

## COUNT II

### Avoidance of Constructive Fraudulent Transfer Under Bankruptcy Code § 548(a)(1)(B) (Against WAX and MAO)

11 U.S.C. § 548

47.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

48.     Bankruptcy Code § 548(a)(1)(B) provides that the court can avoid any transfer of the Debtors' property or incurrence of an obligation made within two years of the petition that the debtor did received less than reasonably equivalent value in exchange for and that was made when the debtor was insolvent, engaging in business with unreasonably small capital, and/or intended to occur debts beyond the debtors' ability to pay.  *See* 11 U.S.C. § 548(a)(1)(B).

49.     In connection with the September 2024 transaction, the Debtors incurred obligations and effectuated transfers of property interests in connection with the restructuring, allocation, and/or assignment of interests in the WT Term Loan and related indebtedness to WAX and MAO.

50.     Specifically, in connection with the 2024 transaction, the Debtors issued new notes to WAX and MAO, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████. Welltower had, however, ██████████████████████████████████████████ ████████████████████████████████████████████████ WAX and MAO now assert, however, that their claims based on the new notes are valid, enforceable, and

entitled to payment prior to other Genesis creditors.  The issuance of those notes to WAX and

MAO constituted the incurrence of an obligation to WAX and MAO within the meaning of § 548.[24]

51.    The September 2024 transaction improved WAX and MAO's positions relative to

other creditors.  For example, the September 2024 transaction required Genesis to pay ███████

████████████████████████████████████  These benefits would and should have been

provided to Genesis in return for its agreement to participate in the transaction.  Instead, ██████

███████████████████████████

52.    The 2024 transaction involved transfers and the incurrence of obligations to WAX

and MAO without reasonably equivalent value.  In short, ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  Moreover, ██████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████  Genesis received no value in exchange

for this rescission or cancellation of the agreement to release the debt, or for the issuance of the

new notes.  Instead, ████████████████████████████████████████████

█████████████████████████████

53.    The Debtors were either insolvent at the time of the September 2024 transaction,

rendered insolvent by that transaction, operating with unreasonably small capital or believed that

they were incurring debts beyond their ability to pay them.

---

[24] Indeed, the lack of consideration for the issuance of the note, ████████████████████████████████
███████ demonstrates that the WAX & MAO Claims should be disallowed as unenforceable under
Bankruptcy Code § 502(b)(1) for lack of consideration.

54. Accordingly, Plaintiffs are entitled to a judgment against WAX and MAO (i) avoiding the transfers made in the 2024 transaction under Bankruptcy Code § 548(a), (ii) recovering the transfers for the benefit of the estates under Bankruptcy Code § 550(a), and (iii) preserving the transfers for the benefit of the estates under Bankruptcy Code § 551.

### COUNT III

**Avoidance of Constructive Fraudulent Transfer
Under Bankruptcy Code § 544(a) and Pennsylvania Law
(Against WAX and MAO)**

11 U.S.C. § 544; 12 Pa.C.S. § 5104

55. Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

56. Section 544(a)(1) provides the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable by a creditor holding a judicial lien under applicable state law. Section 544(b)(1) provides the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable by a creditor under applicable state law.

57. The Debtors are headquartered in Pennsylvania.

58. Under Pennsylvania law, a transfer made by the Debtors or an obligation incurred by the Debtors is avoidable by a creditor if either (a) the Debtor had actual intent to hinder, delay or defraud creditors or (b) the Debtor did not receive reasonably equivalent value and was, at the time, insolvent, engaging in business with unreasonably small capital, and/or intended to occur debts beyond the debtors' ability to pay. 12 Pa.C.S. § 5104.

59. In connection with the September 2024 transaction, the Debtors █████████

█████████████████████████████████████████████████████████████████

15

████████████████████████████████████████████████████

███████

60.     Specifically, in connection with the 2024 transaction, the Debtors issued new notes to WAX and MAO, ████████████████████████████████████

████████████████████████████████████████████

Welltower had, however, ████████████████████████████████

████████████████████████████████████████   WAX and MAO now assert, however, that their claims based on the new notes are valid, enforceable, and entitled to payment prior to other Genesis creditors.  The issuance of those notes to WAX and MAO constituted the incurrence of an obligation to WAX and MAO within the meaning of § 548.

61.     The September 2024 transaction improved WAX and MAO's positions relative to other creditors.  For example, the September 2024 transaction required Genesis to pay ██████

████████████████████████████   These benefits would and should have been provided to Genesis in return for its agreement to participate in the transaction.  Instead, Landau redirected the benefits to himself.

62.     The 2024 transaction involved transfers and the incurrence of obligations to WAX and MAO without reasonably equivalent value.  In short, ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████   Moreover, ████████████████████████

████████████████████████████████████████████

████████████████████████████   Genesis received no value in exchange for this rescission or cancellation of the agreement to release the debt, or for the issuance of the

16

new notes.  Instead, ██████████████████████████████████

██████████████████████

63.     The Debtors were either insolvent at the time of the September 2024 transaction, rendered insolvent by that transaction, operating with unreasonably small capital or believed that they were incurring debts beyond their ability to pay them.

64.     Accordingly, Plaintiffs are entitled to a judgment against WAX and MAO (i) avoiding the transfers made in the 2024 transaction under Bankruptcy Code § 544 and 12 Pa.C.S. § 5104, (ii) recovering the transfers for the benefit of the estates under Bankruptcy Code § 550(a), and (iii) preserving the transfers for the benefit of the estates under Bankruptcy Code § 551.

## COUNT IV

### Equitable Subordination of Secured Claims (MAO)

### 11 U.S.C. § 510(c)

65.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

66.     Bankruptcy Code § 510(c) provides that "[n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate."

67.     The MAO Claims are subject to subordination under § 510(c) for three, independent reasons:  MAO's own misconduct, Landau's misconduct (which is attributable to MAO), and/or misconduct that would have justified subordination of the MAO Claims when they remained in Welltower's hands.

17

68.     MAO is controlled by Landau and Gefner and is an insider of the Debtors.

69.     MAO engaged in inequitable conduct that has enriched itself, Landau, and related Landau-controlled entities to the expense of the Debtors and their creditors.  MAO holds secured claims as a result of this inequitable conduct.

70.     Specifically, prior to 2024,



71.     In return for the transfer of approximately ████████████████████ ██████████ MAO paid ██████ or less.

72.     The Debtors received nothing in exchange for ██████████████████ from Welltower.

73.     The Debtors were harmed by MAO's machinations and inequitable conduct.  This harm includes, but is not limited to, dilution of unsecured creditor recoveries.

74.     Equitable subordination of the MAO Secured Claims is necessary to remedy its inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

75.     Additionally, upon information and belief, the MAO Secured Claims were assigned to it by Welltower. If those claims had remained in Welltower's possession, they would be subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because Welltower engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved its own

economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors. The subordination imposed by § 510(c) attaches to the claim itself and is not eliminated through assignment. Accordingly, the secured claims now asserted by MAO are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Welltower's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

76.     Additionally, upon information and belief, MAO is controlled by and is a mere alter ego of Landau. Landau breached his fiduciary duties and engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved his own economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors. Landau's inequitable conduct is attributable to the MAO Claims, for at least two independent reasons: (1) those claims are only held by MAO as a result of Landau's breach of fiduciary duty and (2) MAO is an alter ego of Landau's. Accordingly, the MAO Secured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Landau's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

77.     Accordingly, (1) the MAO Secured Claims should be equitably subordinated pursuant to Bankruptcy Code § 510(c)(1) and (2) the liens securing MAO's subordinated secured claim should be transferred to the estate pursuant to Bankruptcy Code § 510(c)(2).

## COUNT V

### Equitable Subordination of Unsecured Claims (MAO)

11 U.S.C. § 510(c)

78.     Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

79.     Bankruptcy Code § 510(c) provides that "[n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may— (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate."

80.     The MAO Claims are subject to subordination under § 510(c) for three, independent reasons:  MAO's own misconduct, Landau's misconduct (which is attributable to MAO), and/or misconduct that would have justified subordination of the MAO Claims when they remained in Welltower's hands.

81.     MAO is controlled by Landau and Gefner, and MAO is an insider of the Debtors.

82.     MAO has engaged in inequitable conduct that has enriched itself, Landau, and related Landau-controlled entities to the expense of the Debtors and their creditors.  MAO holds unsecured claims as a result of this inequitable conduct.

83.     Specifically, prior to 2024, ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████.

84.     In return for the transfer of approximately ████████████████████ ████████████ MAO paid ███████ or less.

85.     The Debtors received nothing in exchange for ████████████████████ from Welltower.

86.     The Debtors were harmed by MAO's machinations and inequitable conduct.

87.     The Debtors' creditors were harmed by MAO's machinations and inequitable conduct.  This harm includes, but is not limited to, dilution of unsecured creditor recoveries.

88.     Equitable subordination of the MAO Unsecured Claims is necessary to remedy its inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

89.     Additionally, upon information and belief, the unsecured claims asserted by MAO were assigned to it by Welltower. If those claims had remained in Welltower's possession, they would be subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because Welltower engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved its own economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors.  The subordination imposed by § 510(c) attaches to the claim itself and is not eliminated through assignment. Accordingly, the MAO Unsecured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Welltower's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

90.     Additionally, upon information and belief, MAO is controlled by and is a mere alter ego of Landau.   Landau breached his fiduciary duties and engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors,

structured transactions to benefit insider interests, and preserved his own economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors. Landau's inequitable conduct is attributable to the MAO Claims, for at least two independent reasons: (1) those claims are only held by MAO as a result of Landau's breach of fiduciary duty and (2) MAO is an alter ego of Landau's. Accordingly, the MAO Unsecured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Landau's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

91.    For the foregoing reasons, the MAO Unsecured Claims should be equitably subordinated pursuant to Bankruptcy Code § 510(c)(1).

### COUNT VI

**Equitable Subordination of Secured Claims (WAX)**

11 U.S.C. § 510(c)

92.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

93.    Bankruptcy Code § 510(c) provides that "[n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate."

94.    The WAX Claims are subject to subordination under § 510(c) for three, independent reasons: WAX's own misconduct, Landau's misconduct (which is attributable to

22

WAX), and/or misconduct that would have justified subordination of the WAX Claims when they remained in Welltower's hands.

95.     WAX is controlled by Landau, and WAX is an insider of the Debtors.

96.     WAX has engaged in inequitable conduct that has enriched itself, Landau, and related Landau-controlled entities to the expense of the Debtors and their creditors.  WAX holds secured claims as a result of this inequitable conduct.

97.     Specifically, prior to 2024,



98.     In return for the transfer of approximately ███████████████████

███████████████████████████████████████████, WAX paid

██████  or less.

99.     The Debtors received nothing in exchange for ████████████████ from Welltower.

100.    The Debtors were harmed by WAX's machinations and inequitable conduct.

101.    The Debtors' creditors were harmed by WAX's machinations and inequitable conduct.  This harm includes, but is not limited to, dilution of unsecured creditor recoveries.

102.    Equitable subordination of WAX's secured claims is necessary to remedy its inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

103.    Additionally, upon information and belief, the WAX Secured Claims were assigned to it by Welltower. If those claims had remained in Welltower's possession, they would be subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because Welltower engaged in

23

inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved its own economic position at the expense of the Debtors.  Such conduct harmed the Debtors and their creditors.  The subordination imposed by § 510(c) attaches to the claim itself and is not eliminated through assignment. Accordingly, the WAX Secured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Welltower's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

104.    Additionally, upon information and belief, WAX is controlled by and is a mere alter ego of Landau.  Landau breached his fiduciary duties and engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved his own economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors.  Landau's inequitable conduct is attributable to the WAX Claims, for at least two independent reasons: (1) those claims are only held by WAX as a result of Landau's breach of fiduciary duty and (2) WAX is an alter ego of Landau's.  Accordingly, the WAX Secured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Landau's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

105.    For the foregoing reasons, (1) the WAX Secured Claims should be equitably subordinated pursuant to Bankruptcy Code § 510(c)(1) and (2) the liens securing WAX's subordinated secured claim should be transferred to the estate pursuant to Bankruptcy Code § 510(c)(2).

## COUNT VII

### Equitable Subordination of Unsecured Claims (WAX)

11 U.S.C. § 510(c)

106. Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

107. Bankruptcy Code § 510(c) provides that "[n]otwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or (2) order that any lien securing such a subordinated claim be transferred to the estate."

108. The WAX Claims are subject to subordination under § 510(c) for three, independent reasons:  WAX's own misconduct, Landau's misconduct (which is attributable to WAX), and/or misconduct that would have justified subordination of the WAX Claims when they remained in Welltower's hands.

109. WAX is controlled by Landau, and WAX is an insider of the Debtors.

110. WAX has engaged in inequitable conduct that has enriched itself, Landau, and related Landau-controlled entities to the expense of the Debtors and their creditors.  WAX holds unsecured claims as a result of this inequitable conduct.

111. Specifically, prior to 2024,

25

112. In return for the transfer of approximately ███████████████████

███████████████████████████████████████████████████, WAX

paid ██████ or less.

113. The Debtors received nothing in exchange for ███████████████████ from

Welltower.

114. The Debtors were harmed by WAX's machinations and inequitable conduct.

115. The Debtors' creditors were harmed by WAX's machinations and inequitable

conduct. This harm includes, but is not limited to, dilution of unsecured creditor recoveries.

116. Equitable subordination of the WAX Unsecured Claims is necessary to remedy its

inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

117. Additionally, upon information and belief, the WAX Unsecured Claims were

assigned to it by Welltower. If those claims had remained in Welltower's possession, they would

be subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because Welltower

engaged in inequitable conduct, orchestrating and participating in insider-driven transactions that

extracted value from the Debtors, structured transactions to benefit insider interests, and preserved

its own economic position at the expense of the Debtors. Such conduct harmed the Debtors and

their creditors. The subordination imposed by § 510(c) attaches to the claim itself and is not

eliminated through assignment. Accordingly, the WAX Unsecured Claims are subject to equitable

subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to

remedy Welltower's inequitable conduct and is not inconsistent with the provisions of the

Bankruptcy Code.

118. Additionally, upon information and belief, WAX is controlled by and is a mere alter

ego of Landau. Landau breached his fiduciary duties and engaged in inequitable conduct,

26

orchestrating and participating in insider-driven transactions that extracted value from the Debtors, structured transactions to benefit insider interests, and preserved his own economic position at the expense of the Debtors. Such conduct harmed the Debtors and their creditors.   Landau's inequitable conduct is attributable to the WAX Claims, for at least two independent reasons: (1) those claims are only held by WAX as a result of Landau's breach of fiduciary duty and (2) WAX is an alter ego of Landau's.   Accordingly, the WAX Unsecured Claims are subject to equitable subordination pursuant to Bankruptcy Code § 510(c) because such subordination is necessary to remedy Landau's inequitable conduct and is not inconsistent with the provisions of the Bankruptcy Code.

119.    For the foregoing reasons, the WAX Unsecured Claims should be equitable subordinated pursuant to Bankruptcy Code § 510(c).

### COUNT VIII

**Imposition of Constructive Trust on Account of Landau's Breach of Fiduciary Duty
(WAX and MAO)**

120.    Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

121.    Under applicable Delaware law, directors owe fiduciary duties of care and loyalty to the corporation and its stockholders, requiring them to act in good faith, with informed, disinterested, and independent decision-making for the long-term benefit of the company.  These duties include oversight of corporate operations, acting prudently, avoiding conflicts of interest, and maximizing corporate value for stockholders.

122.    The September 2024 transaction transferred to █████████████

27

███████████████████████████████████████████████████

███████████████████████████████████████████

123.     Upon information and belief, WAX and MAO are sham entities belonging to Mr. Landau with no company records or employees beyond those records belonging to Mr. Landau. At all times, all parties relevant to the September 2024 transaction treated Mr. Landau and WAX and MAO interchangeably.

124.     Upon information and belief, WAX and MAO were created for the purpose of entering into the September 2024 transaction.

125.     WAX and MAO are controlled by Landau.

126.     Landau exercised significant control over Debtors' board and the business affairs of Debtors from 2021 to present, including during the September 2024 transaction.  For example, upon information and belief, the September 2024 transaction was structured ████████████████

████████████████████████

127.     The September 2024 transaction was not approved by a special committee of independent directors.

128.     The Debtors did not receive reasonably equivalent value for the transfers and obligations generated by the September 2024 transaction.

129.     The Debtors were either insolvent at the time of the September 2024 transaction, rendered insolvent by that transaction, operating with unreasonably small capital or believed that they were incurring debts beyond their ability to pay them.

130.     By facilitating the September 2024 transaction, Landau usurped the Debtors' corporate opportunity ████████████████████████████

28

131. WAX and MAO will be unjustly enriched if they retain their claims, which were obtained through Landau's breach of fiduciary duty to the Debtors.

132. For the foregoing reasons, a constructive trust should be imposed on WAX and MAO's claims for the benefit of the Debtors' estates.

## COUNT IX

### Preferential Transfer (WAX)

### 11 U.S.C. § 547

133. Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

134. Bankruptcy Code § 547(b) provides that the trustee may avoid any transfer of an interest of the debtor in property to a creditor, made on account of an antecedent debt, made while the debtor was insolvent, made to an insider within one year before the petition, that enables the creditor to receive more than such creditor would receive in a chapter 7 liquidation. 11 U.S.C. § 547(b).

135. In October 2024, WAX received payment of ██████████████████████ ████████████████████████████████████████

136. Less than a year after that payment was made, the Debtors filed for relief under chapter 11 of the Bankruptcy Code.

137. WAX is controlled by Landau, and WAX is an insider of the Debtors.

138. The payments have allowed WAX to receive more than it would receive in a chapter 7 liquidation.

139. For the foregoing reasons, the Debtors are entitled to a judgment against WAX (i) avoiding the preferential transfers made to WAX under Bankruptcy Code § 547(b), (ii) recovering

the transfers for the benefit of the estates under Bankruptcy Code § 550(a), and (iii) preserving the transfers for the benefit of the estates under Bankruptcy Code § 551.

## COUNT X

### Disallowance of Claims Under § 502(d) (WAX & MAO)

11 U.S.C. § 502(d)

140. Plaintiffs reassert and reallege the allegations contained in paragraphs 1–37 above, as if fully set forth herein.

141. Bankruptcy Code § 502(d) provides that the court shall disallow any claim of any entity from which property is recoverable under, among other things, § 550 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under, among other things, §§ 544 or 548, unless such entity or transferee has paid the amount, or turned over any such property. 11 U.S.C. § 502(d).

142. For the reasons explained above, WAX and MAO are transferees of transfers avoidable under 11 U.S.C. §§ 544, 547 and 548, which property is recoverable under 11 U.S.C. § 550(a).

143. Additionally, upon information and belief, the secured claims asserted by WAX and MAO were assigned to them by Welltower. Had those claims remained in Welltower's possession, they would be subject to disallowance under 11 U.S.C. § 502(d) because Welltower received transfers avoidable under 11 U.S.C. §§ 544, 547, and 548, the value of which is recoverable under 11 U.S.C. § 550(a). The disallowance imposed by § 502(d) attaches to the claim itself and is not eliminated through assignment. Accordingly, the secured claims now asserted by WAX and MAO are subject to disallowance under § 502(d) unless and until the avoidable transfers received by Welltower are returned to the Debtors' estates.

144.   Additionally, upon information and belief, WAX and MAO are controlled by and are mere alter egos of Landau.  Landau received transfers avoidable under 11 U.S.C. §§ 544, 547, and 548, the value of which is recoverable under 11 U.S.C. § 550(a).  Because WAX and MAO operate as alter egos of Landau, Landau's receipt of avoidable transfers is attributable to WAX and MAO.  Accordingly, the secured claims now asserted by WAX and MAO are subject to disallowance under § 502(d) unless and until the avoidable transfers received by Landau are returned to the estate.

145.   WAX, MAO, Welltower, and Landau have not paid the amount of the transfers or turned over such property for which they are liable under 11 U.S.C. § 550(a).

146.   Accordingly, Plaintiffs are entitled to a judgment, pursuant to 11 U.S.C. § 502(d), disallowing all claims of WAX and MAO against the Debtors.

## RESERVATION OF RIGHTS

147.   Plaintiffs submit this Complaint without prejudice to, and with a full reservation of the Debtors' estate's rights, claims, defenses, and remedies, including the right to amend, modify, or supplement this Complaint, to raise additional objections, and to introduce evidence at any hearing relating to the WAX & MAO Claims.  This Complaint is also brought without in any way limiting any other rights to further object to the WAX & MAO Claims.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, and as the evidence adduced at trial will demonstrate sufficient basis for, Plaintiffs respectfully request that the Court enter an order providing for the following relief:

(i)   Avoiding the WAX & MAO Claims as fraudulent transfers and recovering them for the benefit of the Debtors' estates;

31

(ii)   Equitably subordinating the WAX & MAO Claims and ordering that the lien securing such subordinated claims be transferred to the Debtors' estates pursuant to § 510(c) of the Bankruptcy Code;

(iii)   Imposing a constructive trust on the WAX & MAO Claims due to Landau's breaches of fiduciary duty;

(iv)   Disallowing the WAX & MAO Claims under § 502(d) of the Bankruptcy Code due to their receipt, or the receipt by Welltower and/or Landau, of voidably transferred property;

(v)   Avoiding preferential transfers received by WAX under Bankruptcy Code § 547; and

(vi)   Such other and further relief as the Court deems just and proper.

[*Remainder of Page Intentionally Left Blank*]

*/s/ Thomas R. Califano*
**SIDLEY AUSTIN LLP**
Thomas R. Califano (24122825)
Chelsea McManus (24131499)
2323 Cedar Springs Road, Suite 2600
Dallas, Texas 75201
Telephone:     (214) 981-3300
Facsimile:      (214) 981-3400
Email:            tom.califano@sidley.com
                     cmcmanus@sidley.com

- and -

William E. Curtin (admitted *pro hac vice*)
Anne G. Wallice (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:     (212) 839-5300
Facsimile:      (212) 839-5599
Email: wcurtin@sidley.com
anne.wallice@sidley.com

*Counsel to the Special Restructuring Committee of Genesis Healthcare, Inc.*

- and -

**STINSON LLP**

*/s/ Zachary Hemenway*
Nicholas Zluticky (*pro hac vice*)
Zachary Hemenway (NDTX Bar No. 59670MO)
Miranda Swift (*pro hac vice*)
1201 Walnut, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com
miranda.swift@stinson.com

- and -

**PROSKAUER ROSE LLP**

Brian S. Rosen (*pro hac vice*)
Timothy Q. Karcher (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Daniel Desatnik (*pro hac vice*)
Elliot R. Stevens (*pro hac vice*)
Eleven Times Square
New York, New York 10036-8299
Telephone: (212) 969-3000
Facsimile: (212) 969-2900
Email: brosen@proskauer.com
         tkarcher@proskauer.com
         ebarak@proskauer.com
         ddesatnik@proskauer.com
         estevens@proskauer.com

-and-

Paul V. Possinger (*pro hac vice*)
Jordan E. Sazant (*pro hac vice*)
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602-4342
Telephone: (312) 962-3570
Email: ppossinger@proskauer.com
         jsazant@proskauer.com

*Counsel to the Statutory Unsecured Claimholders'*
*Committee to Genesis Healthcare, Inc., et al.*